# EXHIBIT B

Certified Article Number
7160 3901 9845 2628 3769
SENDERS RECORD

**Wildman, Harrold, Allen & Dixon LLP**
225 West Wacker Drive
Chicago, Illinois 60606-1229
312-201-2000
312-201-2555 fax
www.wildmanharrold.com

E. Tim Walker
312-201-2279
walker@wildman.com

**Wildman Harrold**
*Attorneys and Counselors*

November 29, 2007

**VIA CERTIFIED MAIL**

Alex Hazan
146 Bogey Crossing Street
Henderson, Nevada 89094

Re: John Fife v. Alex Hazan, United States District Court for the
Northern District of Illinois, Case No. 07 C 6681

Dear Mr. Hazan:

Enclosed please find two copies of the Notice of Lawsuit and Request for Waiver of Service, the Complaint, and the Waiver of Service of Summons.

Sincerely,

*Tim Walker*

E. Tim Walker

Enclosures

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN FIFE | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO: 07 C 6681 |
| | ) | |
| ALEX HAZAN | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

NOTICE OF LAWSUIT AND
REQUEST FOR WAIVER OF SERVICE OF SUMMONS

**To:**   Alex Hazan
         146 Bogey Crossing Street
         Henderson, Nevada 89094

A lawsuit has been commenced against you. A copy of the Complaint is attached to this notice. It has been filed in the United States District Court for the Northern District of Illinois and has been assigned docket number 07 C 6681.

This is not a formal summons or notification from the court, but rather my request that you sign and return the enclosed waiver of service in order to save the cost of serving you with a judicial summons and an additional copy of the Complaint. The cost of service will be avoided if I receive a signed copy of the waiver within 30 days after the date designated below as the date on which this Notice and Request is sent. I enclose a stamped and addressed envelope for your use. An extra copy of the notice and waiver is also attached for your records.

If you comply with this request and return the signed waiver, it will be filed with the court and no summons will be served on you. The action will then proceed as if you had been

served on the date the waiver is filed, except that you will not be obligated to answer the complaint before 60 days from the date designated below as the date on which this notice is sent.

If you do not return the signed waiver within the time indicated, I will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, to the extent authorized by those Rules, ask the court to require you to pay the full costs of such service. In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth at the foot of the waiver form.

I affirm that this request is being sent to you on behalf of the plaintiff this 29th day of November, 2007.

JOHN FIFE

By: _____
One of the Attorneys for John Fife

Craig M. White, Esq. (#2999668)
Wildman, Harrold, Allen & Dixon, LLP
225 West Wacker Drive, Suite 2800
Chicago, Illinois 60606-1229
(312) 201-2000

Kc

**FILED**
NOVEMBER 28, 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN FIFE )<br><br>Plaintiff, )<br>v. )<br>ALEX HAZAN )<br><br>Defendant. ) | **07 C 6681**<br><br>CASE NO:<br>JUDGE KOCORAS<br>JURY TRIAL DEMANDED<br>MATE JUDGE DENLOW |

## COMPLAINT

The Plaintiff John Fife ("Fife" or "Plaintiff") by his attorneys, Wildman, Harrold, Allen, & Dixon, LLP, complains against the Defendant as follows:

## PARTIES

1. Fife is an individual who is domiciled in the State of Illinois and does business in this judicial district.

2. Defendant Alex Hazan ("Hazan" or "Defendant") is an individual that, upon information and belief, is domiciled and resides at 146 Bogey Crossing Street, Henderson, NV 89094. Hazan is the President of a Royal Spring Water, Inc. (OTC:RSPG.PK) ("Royal Spring"), a Nevada company that is currently publicly traded on the Over the Counter Bulletin Board ("OTCBB").

## JURISDICTION AND VENUE

3. Pursuant to the parties' agreement titled "Series 2007 Secured Original Issue Discount Note Due November 13, 2007," the parties agreed, for any action to enforce the terms of the agreement, that (1) the U.S. District Court for the Northern District of Illinois had

jurisdiction over the matter and (2) that venue was proper in the U.S. District Court for the Northern District of Illinois. A true copy of said note is attached hereto as Exhibit A and made a part of hereof. Hazan has otherwise purposefully availed himself to the jurisdiction of this Court.

4.   The Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a) because the matter in controversy is between citizens of different states and exceeds the sum of $75,000.00.

5.   Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claim occurred in this district.

## GENERAL ALLEGATIONS

6.   On or about May 13, 2007, Fife loaned $500,000.00 ("Loan Amount") to Hazan, personally, for the purpose of purchasing equipment for Hazan's company, Royal Spring. As consideration for the loan, Hazan agreed to repay Fife $637,500.00 when the loan became due.

7.   Hazan also agreed to pledge to Fife common stock in Royal Spring as collateral for the loan, which could be sold by Fife in the event that Hazan defaulted under the loan. Despite Hazan's covenants and promises within the parties' agreements, Hazan quickly defaulted under the loan, and has since refused to repay Fife the amounts outstanding under the loan.

8.   The basis for the parties' transaction is set forth in two agreements. The first agreement, titled the "Series 2007 Secured Original Issue Discount Note Due November 13, 2007" ("Promissory Note"), memorializes the promissory note between Fife and Hazan in which Hazan received the Loan Amount in exchange for Hazan's promise to repay $637,500.00 ("Maturity Amount") no later than November 13, 2007, or upon failure to cure an event of default, whichever occurred first. ("Maturity Date").

9. The second agreement, titled the "Stock Pledge Agreement" ("Stock Agreement"), details the terms of Hazan's pledge to Fife of 1,000,000 shares of common stock in Royal Spring as collateral for the loan made under the Promissory Note (the 1,000,000 shares of common stock pledged to Fife as collateral are hereinafter referred to as the "Royal Spring Stock"). Attached hereto as Exhibit B is a true and correct copy of the Stock Agreement.

### *The Promissory Note*

10. The Promissory Note sets forth the terms, covenants, and conditions of Fife's loan to Hazan, in which Hazan agreed to repay to Fife the Maturity Amount.

11. Under section 3 of the Promissory Note, Hazan covenanted to Fife, among other things, that Hazan would (1) make all payments of principal, interest, and other obligations under the note; (2) ensure that the common stock of Royal Spring had an average daily trading volume of at least $150,000.00 for any ten trading-day period; and, (3) warrant that the market value of Royal Spring Stock would not be less than three times the Maturity Amount during the term of the note. Exh. A, Promissory Note, §§ 3(a), (g), and (k).

12. Specifically, Hazan promised under section 3(g) of the Promissory Note that the average daily trading volume of Royal Spring's common stock would not,

> during any consecutive ten (10) trading-day period, be less than one hundred fifty thousand ($150,000.00) dollars in value; provided that, for the purposes of measuring compliance with this covenant, the value of the Common Stock traded for each trading day shall be deemed to be equal to the average of the Volume Weighted Average Price [ ] of the Common Stock times the volume, each as reported by Bloomberg, L.P.

*Id.*, at § 3(g). Both parties understood that the Volume Weighted Average Price ("VWAP"), as used in the agreements, referred to a publicly-listed figure calculated by commercial financial institutions, including Bloomberg, L.P.

13. As a separate covenant, section 3(k) of the Promissory Note provided that the market value of the Royal Spring Stock tendered as collateral would not be less than three (3) times the Maturity Amount during the term of the Promissory Note. If the value of the Royal Spring Stock decreased below this threshold, Hazan agreed to provide Fife with sufficient additional collateral so that the value of the collateral held by Fife was equal or greater to three times the Maturity Amount.

14. Hazan agreed that the failure to adhere to any of the covenants of the Promissory Note would constitute an event of default. The Promissory Note gave Hazan – on the occurrence of an event of default – five (5) trading days after the event of default to cure the event. *Id.*, at § 4.

15. If Hazan failed to cure his default within five trading days, section 4 of the note mandated that the remaining, unpaid Maturity Amount ("Outstanding Maturing Amount") would become immediately due and payable to Fife, and that default interest would begin to accrue immediately on the Outstanding Maturity Amount at the rate of eighteen percent (18%) per annum.

16. Upon the occurrence of an event of default, section 4 of the Promissory Note, among other provisions, also authorized Fife to sell the Royal Spring Stock or otherwise exercise any rights provided under the Stock Agreement with respect to the Royal Spring Stock.

*The Stock Agreement*

17. The Stock Agreement details the terms of the parties understanding concerning the collateral for the Promissory Note, and specifically detailed the rights and obligations of Fife and Hazan concerning the Royal Spring Stock. By its terms, the Stock Agreement remained

effective until Hazan paid in full the Maturity Amount under the Promissory Note. Exh. B, Stock Agreement, § 12(a).

18. The Stock Agreement also provided the mechanism for Fife to sell or otherwise obtain value for the Royal Spring Stock after an event of a default occurred under the Promissory Note.

19. On the happening of an event of default under the Promissory Note, the Stock Agreement authorized Fife to sell all or part of the Royal Spring Stock held as collateral, through a private or public sale, "at any exchange, broker's board or at any of [Fife's] offices or elsewhere, for cash, on credit, or for future delivery, at such time or times and at such price or prices and upon such other terms as [Fife] may deem commercially reasonable." *Id.*, at § 11(a).

20. Pursuant to the Promissory Note and the Stock Agreement, the amount received from the sale of the Royal Spring Stock would then be applied to the Outstanding Maturity Amount, and Fife could recover from Hazan the remainder of the Outstanding Maturity Amount still due and payable. *See id.*, at § 12(b).

21. Hazan agreed under both the Promissory Note and the Stock Agreement to reimburse Fife for any and all legal fees and disbursements incurred by the Fife in enforcing the terms of the Promissory Note. Exh. A, Promissory Note, § 10(e); Exh. B, Stock Agreement, § 13(b).

*Hazan's Default under the Promissory Note*

22. Pursuant to the Promissory Note and the Stock Agreement, Fife loaned to Hazan $500,000.00 on May 13, 2007, in exchange for Fife's promises and covenants under the parties' agreements.

23. Contemporaneous with the loan, Hazan pledged to Fife the Royal Spring Stock as collateral for the loan. Attached hereto as Exhibit C is a true and correct copy of the opinion of counsel relating to the Royal Spring Stock transfer ("Opinion Letter").

24. On or about May 14, 2007, the average daily trading volume of the common stock of Royal Spring – determined by multiplying the VWAP by the volume of stock traded on that day – was over $150,000.00, as reported by Bloomberg, L.P. Attached hereto as Exhibit D is a true and correct copy a June 26, 2007 letter from Fife to Hazan, with exhibits ("First Default Letter").

25. Hazan, however, quickly defaulted under the terms of the Promissory Note. Beginning on May 30, 2007, the average daily trading volume of the common stock of Royal Spring fell below $150,000.00, and remained below $150,000.00 for at least 10-consecutive days. Exh. D, First Default Letter.

26. Under section 3(g) of the Promissory Note, the shortfall in the average daily trading volume of the common stock of Royal Spring constituted an event of default, which Hazan failed to cure within five trading days. Exh. A, Promissory Note, §§ 3(g), 4.

27. On June 26, 2007, Fife placed Hazan on notice of the event of default. Exh. D, First Default Letter. Hazan did not take any corrective action in response to the First Default Letter.

28. Instead, Hazan again defaulted on the loan. On July 10, 2007, the Royal Spring Stock's market value fell below the required benchmark of being three (3) times the value of the Maturity Amount, as required by section 3(k) of the Promissory Note.

29. Specifically, the average VWAP of common stock for Royal Spring for the five previous trading days was $1.72, and the value of the Royal Spring Stock was only $1,720,000.

Attached hereto as Exhibit E is a true and correct copy a July 10, 2007 letter from Fife to Hazan ("Second Default Letter"). The required value of three times the Maturity Amount was $1,912,500, leaving a shortfall of $192,500.00.

30. The shortfall in the Royal Spring Stock's value constituted a second event of default under section 3(k) of the Promissory Note. Exh. A, Promissory Note, § 3(k). Under the terms of the Stock Agreement, Hazan was required pledge to Fife additional common stock of Royal Spring to alleviate the shortfall.

31. On July 10, 2007, Fife placed Hazan on notice of another event of default, which Hazan failed to cure within five trading days. Exh. E, Second Default Letter. Despite Fife's demands, Hazan failed to pledge any additional common stock of Royal Spring.

32. Upon Hazan's second default under the Promissory Note, Fife commenced the sale of the Royal Spring Stock to satisfy the Outstanding Maturity Amount of $637,500.00. All sales of the Royal Spring Stock were made at market prices.

33. Between July 2007 and October 2007, Fife sold the Royal Spring Stock for a total of $537,195.62. The proceeds received from the sales of the Royal Spring Stock were $100,304.38 short of the Outstanding Maturity Amount, exclusive of the default interest, costs, and fees. Attached hereto as Exhibit F is a true and correct copy a October 10, 2007 letter from Fife to Hazan ("Third Default Letter").

34. Despite repeated demands by Fife, Hazan has refused to tender to Fife the remaining amounts due and owing under the Promissory Note.

## FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

35. Paragraphs 1 through 34 above are incorporated here by reference.

36. The Promissory Note constituted a valid and binding note in which Hazan agreed to repay to Fife the entire Outstanding Maturity Amount on the occurrence of an event of default.

37. Beginning on May 30, 2007, the average daily trading volume of the common stock of Royal Spring fell below $150,000.00. Exh. D, First Default Letter. Thereafter, the average daily trading value of the common stock remained below $150,000.00 for at least 10-consecutive days.

38. The shortfall in the average daily trading value of the common stock of Royal Spring constituted an event of default under section 3(g) of the Promissory Note. Exh. A, Promissory Note, § 3(g).

39. Pursuant to section 4 of the Promissory Note, the Outstanding Maturity Amount became due and payable on or about June 20, 2007. At that time, Hazan had not made any payments under the Promissory Note. Therefore, the Outstanding Maturity Amount ($637,500.00) on June 20, 2007 was equal to the Maturity Amount ($637,500.00).

40. On June 20, 2007, default interest of eighteen percent per annum began accruing on the Outstanding Maturity Amount.

41. On July 10, 2007, the average VWAP of common stock for Royal Spring for the five previous trading days was $1.72 and the value of the Royal Spring Stock was only $1,720,000. Attached hereto as Exhibit E is a true and correct copy a July 10, 2007 letter from Fife to Hazan ("Second Default Letter"). The required value of three times the Maturity Amount was $1,912,500, leaving a shortfall of $192,500.00.

42. The shortfall in the value of the Royal Spring Stock constituted a second event of default under section 3(k) of the Promissory Note. Exh. A, Promissory Note, § 3(k).

43. Fife has complied with all of his obligations under the Promissory Note.

44. Fife has sold the Royal Spring Stock that was pledged by Hazan as collateral for the loan.

45. The proceeds received from the sale of the Royal Spring Stock are less than the Outstanding Maturity Amount owed by Hazan. Pursuant to the terms of the Promissory Note, Hazan still owes Fife the remaining Outstanding Maturity Amount, plus default interest of eighteen percent accruing since June 20, 2007.

46. Pursuant to the Promissory Note, Hazan is liable to Fife for Fife's costs and expenses, including reasonable attorneys' fees, that Fife incurs or has incurred enforcing his rights under the note.

47. Despite repeated depends, Hazan has refused to tender to Fife the amounts due and owing under the Promissory Note.

48. As a result of Hazan's failure to pay amounts due under the note, Fife has suffered damages in an amount to be proven at trial.

WHEREFORE, John Fife prays for the entry of a judgment in favor of Fife and against the Defendant, Alex Hazan, for:

    (a) All damages sustained as a result of Hazan's failure to pay the Outstanding Maturity Amount under the Promissory Note, including without limitation, the remaining Outstanding Maturity Amount;

    (b) Any interest earned on the Outstanding Maturity Amount since the event of default under the Promissory Note;

    (c) All costs incurred as a result of Fife's sale of the Royal Spring Stock pursuant to the parties' agreements;

(d)    All costs and reasonable attorney's fees incurred by reason of the enforcement of the parties' agreements and this lawsuit; and,

(e)    Such other and further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, of all issues triable of right by a jury.

Dated: November 28, 2007.

JOHN FIFE

By: *s/ Craig M. White*
One of the Attorneys for John Fife

Craig M. White, Esq. (#2999668)
Wildman, Harrold, Allen & Dixon, LLP
225 West Wacker Drive, Suite 2800
Chicago, Illinois 60606-1229
(312) 201-2000

AO 399 (Rev. 05/00)

# UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

**Waiver of Service of Summons**

TO: _____Craig M. White, Esq., Wildman, Harrold, Allen, & Dixon, LLP_____
(NAME OF PLAINTIFF'S ATTORNEY OR UNREPRESENTED PLAINTIFF)

I, __Alex Hazan_____, acknowledge receipt of your request
(DEFENDANT NAME)

that I waive service of summons in the action of __John Fife v. Alex Hazan_____,
(CAPTION OF ACTION)

which is case number _____07 C 6681_____ in the United States District Court
(DOCKET NUMBER)

for the Northern District of Illinois.

I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after ____11/29/07____,
(DATE REQUEST WAS SENT)
or within 90 days after that date if the request was sent outside the United States.

_____     _____
(DATE)                      (SIGNATURE)

Printed/Typed Name: _____

As _____ of _____
    (TITLE)                    (CORPORATE DEFENDANT)

**Duty to Avoid Unnecessary Costs of Service of Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

7160 3901 9845 2628 3769

3. Service Type  **CERTIFIED MAIL**
4. Restricted Delivery? *(Extra Fee)*  ☐ Yes
1. Article Addressed to:

Alex Hazan
146 Bogey Crossing Street
Henderson, Nevada 89094

A. Received by (Please Print Clearly)
B. Date of Delivery: 12-1-07
C. Signature: X Cheryl Hay
☐ Agent
☐ Addressee
D. Is delivery address different from item 1? If YES, enter delivery address below.
☐ Yes
☐ No

Fife v. Hazan                                    E. Tim Walker
PS Form 3811, January 2005        Domestic Return Receipt